IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-20058
Summary Calendar
_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellants,

        versus

RICKY KAY and
KIMBERLY KAY,

                                        Defendants-Appellees.


_____

Appeal from the United States District Court for the
Southern District of Texas
(95-CR-303-7)
_____

March 15, 1996
Before GARWOOD, SMITH and EMILIO M. GARZA, Circuit Judges.[*]

GARWOOD, Circuit Judge:

        The United States appeals the district court's order granting

defendants Ricky Kay and Kimberly Kay's motion for revocation of

pretrial detention.

### Facts and Proceedings Below

        Ricky Kay and Kimberly Kay (the "Kays") were indicted on

December 4, 1995, along with ten other co-defendants, on multiple

_____

[*]     Pursuant to Local Rule 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

charges of large-scale cocaine trafficking[1] in violation of the Controlled Substances Act, 21 U.S.C. § 801, *et seq*. On December 12, 1995, the magistrate judge conducted a detention hearing at which the prosecutor presented evidence that the Kays should be detained because they posed a flight risk and because they were a danger to the community. Based on the government's evidence, the magistrate judge ordered the Kays detained because no conditions or combination of conditions on release would assure the safety of the community.[2]

---

[1] Ricky Kay ("Ricky") was indicted for one count of conspiracy to possess with intent to distribute and distributing more than five kilograms of cocaine, four counts of aiding and abetting the possession with intent to distribute 500 grams or more of a mixture containing a detectable amount of cocaine, and two counts of aiding and abetting the possession with intent to distribute five kilograms or more of a mixture containing a detectable amount of cocaine. Kimberly Kay ("Kimberly") was indicted for one count of conspiracy to possess with intent to distribute and distributing more than five kilograms of cocaine, and one count of aiding and abetting the possession with intent to distribute 500 grams or more of a mixture containing a detectable amount of cocaine.

[2] Drug Enforcement Administration Supervisory Special Agent Michael A. Braun testified for the prosecution at the detention hearing. He testified that the Kays supplied as much as fifteen kilos of cocaine per month to Bernard Dale, the person described as the manager of the drug conspiracy. Braun also testified that (1) Ricky had been identified as the source of supply of cocaine in another criminal investigation; (2) in addition to routinely supplying cocaine to Dale, Ricky offered to transport drugs in conjunction with his job as a truck driver; (3) on a previous occasion, approximately $45,000 was seized from the trunk of a car that Ricky was driving, and a narcotics dog alerted to the presence of narcotics in the vicinity where the money was located in the vehicle (Ricky waived all interest in the money); (4) Kimberly and the Kays' children were regularly present during the routine transactions with Dale; and (5) on an occasion when Ricky was not home, Kimberly conducted a transaction, taking one of her children with her to obtain two or three kilos of cocaine from the Kays' source of supply and receiving $45,000 for the transaction.
    In response, the Kays proffered the testimony of eight witnesses present at the detention hearing. The witnesses'

The Kays filed motions for revocation and/or amendment of the detention order with the district court pursuant to 18 U.S.C. § 3145(b). They argued in their motions that they presented evidence at the detention hearing to rebut the presumption that they were dangers to the community. At a hearing before the district court, counsel for Ricky informed the court that pretrial services had recommended the Kays be released on $50,000 bond. Counsel also stated that Ricky needed to assist in his own defense by obtaining names and phone numbers to which he did not have access in jail and that Kimberly had "two children that need[ed] to be taken care of." No additional evidence was taken in the district court. After determining that pretrial services had not recommended that any other co-defendants be released on bond, the district court stated "I am going to order that [the Kays] be released on the bonds that have been recommended by pretrial services." It does not appear that the district court reviewed the detention hearing transcript prior to ordering that the Kays be released.[3]

proffered testimony was that the witnesses had known the Kays all of their lives and were shocked by the filing of the charges against them, that the Kays were members of the community and were not a danger to the community, that Ricky was employed and was the sole support for his family, and that Kimberly was a housewife and was needed at home. In addition, the Kays proffered that they were not flight risks, that they owned no guns, that they did not deal drugs out of their home, that their children needed them for support and care, and that they could post the bond suggested by the pretrial services' recommendation.

[3] In response to a suggestion by counsel for one of the Kays' co-defendants that it might be proper for additional co-defendants to be released on bail even though pretrial services did not recommend release, the district court stated it would later "take a look at the detention transcripts or transcript." The district court then ordered the Kays released. The prosecutor immediately

3

Later the same day, the prosecutor filed a motion with the district court for stay of its order granting the Kays' release. The district court's order of the same date denying the stay noted that the Kays were not flight risks; no mention was made of their possible danger to the community. We granted the government's motion to stay the district court's order pending resolution of this appeal. On appeal, the government argues that the district court's order is not supported by the proceedings below because the court failed to conduct a proper balancing of factors, the court's finding that the Kays were not a flight risk did not address the independent basis for detention urged by the government and found by the magistrate judge, and the Kays failed to rebut the statutory presumption that they were a danger to the community. The Kays respond solely that the district court was "merely presuming [they are] innocent at this time, as custom dictates."

**Discussion**

"When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release." *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992), *cert. denied*, 113 S.Ct. 1336 (1993). We review the district court's order revoking or amending the magistrate judge's pretrial detention under a

requested that the court read the detention hearing transcript and reconsider its order. The district court responded to the prosecutor's request only by ordering that the Kays be released on terms and conditions to be set by the magistrate judge.

4

deferential standard equivalent to abuse-of discretion:  absent an error of law, we will uphold a district court's order "if it is supported by the proceedings below."  *Id.* at 586 (quoting *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989)).

There are two sufficient and independent grounds for pretrial detention under the Bail Reform Act:  to assure the appearance of the defendant, or to insure the safety of the community or another person.  *See* 18 U.S.C. § 3142(b).  If there are no conditions of release that can assure either the appearance of the defendant or the community's safety, then pretrial detention is mandated.  18 U.S.C. § 3142(e); *see Rueben*, 974 F.2d at 586-87.  Because the government appeals only on the basis of community safety, we limit our analysis to that ground.

The Bail Reform Act creates a rebuttable statutory presumption that respecting one indicted for certain drug offenses—those for which maximum terms of imprisonment of ten years or more are prescribed by the Controlled Substances Act—no conditions of release exist that would reasonably assure the community's safety. 18 U.S.C. § 3142(e); *Rueben*, 974 F.2d at 586.  The risk of continued narcotics trafficking on bail constitutes a risk to the community.  *Hare*, 873 F.2d at 798.

Because the Kays were indicted for drug offenses that could result in terms of imprisonment for ten years or more,[4] they bore

_____

[4]  See 21 U.S.C. § 841(b) (providing for sentence of ten years to life imprisonment for each drug offense for which Ricky and Kimberly are charged); *id.* § 846 (one who conspires to commit a drug offense is subject to the same penalties as those prescribed for the offense); 18 U.S.C. § 2 (one who aids or abets a crime is

the burden of producing evidence that their release would not pose a danger to the community. *See id.*; *Rueben*, 974 F.2d at 586. The production of evidence sufficient to rebut the presumption does not completely negate all probative value of the facts underlying the presumption; the court may still consider the congressional finding that drug offenders pose a special risk of dangerousness to society. *Hare*, 873 F.2d at 798-99. But the burden of persuasion then rests with the government. *Id.* In determining whether the government meets its burden, the district court must consider the factors set forth in 18 U.S.C. section 3142(g).[5]

After reviewing the evidence as a whole, we conclude that the district court's order to release the Kays on bond is not supported

_____

guilty of the crime).

[5]    These factors include:

> "(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>> (A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, he was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of a sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

6

by the proceedings below.  It is at best doubtful that the Kays proffered evidence sufficient to rebut the presumption of their danger to the community.[6]  *See Reuben* at 587.  Even if they did produce evidence sufficient to rebut the presumption, it appears that the district court considered neither the statutory factors nor the government's evidence and the congressional determination that continued drug dealing can pose a significant danger to the community.  The only factor that the district court mentioned when it ordered that the Kays be released was that pretrial services had recommended bond.  In its order denying the government's request for a stay, the district court stated, "[t]he Court is of the opinion that the evidence fails to support the finding that these defendants are a flight risk.  They in fact surrendered themselves to the agents and are permanent residents of this District."  This

---

[6]    The proffered conclusory statements to be made by life-long acquaintances of the Kays (who were unaware of their drug trafficking) that the Kays were no danger to the community are not probative of the Kays' dangerousness.  *Cf. e.g., Nordgren v. Hafter*, 789 F.2d 334, 339-40 n.4 (5th Cir. 1986) (conclusory statements insufficient to establish genuine issue of material fact and, thus, avoid summary judgment), *cert. denied*, 107 S.Ct. 177 (1986).  It is doubtful that the Kays' own proffered testimony that they owned no guns could rebut the presumption of danger to the community by continued drug trafficking.  *See Hare*, 873 F.2d at 799 (approving the magistrate's holding that the defendant would be a danger to the community because he offered no evidence that he would not continue trafficking drugs).  It may be a closer question whether the Kays' own proffered testimony that they did not deal drugs out of their home rebutted the presumption.  We need not reach the issue whether their general protestations of innocence, without specific denials or explanations of the government's evidence, would be sufficient to rebut the presumption.  *Cf. BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996) (holding that no genuine issue of fact was raised to dispute the defendant's intent to defraud by  his "conclusory, self-serving statement" giving a non-fraudulent reason for his action).

7

statement suggests not only that the district court failed to weigh all of the section 3142(g) factors, but also that it did not consider the Kays' danger to the community at all. Consequently, we hold that the district court's order to release the Kays on bond is not supported by the proceedings below.

## Conclusion

For the foregoing reasons, we VACATE the district court's order to release the Kays' on bond and REMAND for consideration under the appropriate standards whether any condition or combination of conditions for release of the Kays will reasonably assure the safety of the community as provided in section 3142(e).

VACATED and REMANDED